# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 17-60664-CIV-ALTONAGA/GOODMAN

GLORIA RUNTON, by and through her guardian
ADULT ADVOCACY & REPRESENTATION,
on her own behalf and others similarly situated,

      Plaintiff,

v.

BROOKDALE SENIOR LIVING, INC.,

      Defendant.

_____/

## ORDER ON DISCOVERY DISPUTE RE:
## DEFENDANT'S "SERVICE ALIGNMENT" MATERIALS

This discovery order resolves a dispute over Plaintiff's request for Defendant's "Service Alignment" Materials (the "SA Materials"). Plaintiff Gloria Runton seeks these materials from Defendant Brookdale Senior Living, Inc., a Tennessee corporation that owns and operates more than 120 assisted living facilities in Florida. Defendant asserts three reasons why it believes the SA Materials in dispute should not be produced to Ms. Runton (who is a resident at the Brookdale Bayshore facility in Tampa): (1) Ms. Runton violated Local Rule 26.1 by waiting too long to bring the dispute to the Court's attention; (2) the SA Materials -- the algorithms and source code, the time studies, and certain portions of the SA training Materials -- are not proportional to the needs of the

case because the theory underlying the request is different from, and actually contrary to, the theory pled in the Complaint; and (3) many of the materials constitute trade secrets, and Plaintiff's intent to disclose the materials to its expert would generate irreparable harm, even if produced pursuant to a Court-ordered Confidentiality Protective Order.

With the Undersigned's permission, Ms. Runton filed a memorandum opposing Brookdale's trade secret privilege assertion [ECF No. 94], Brookdale filed a memorandum in support of its objection to producing the SA Materials [ECF No. 101], Ms. Runton filed a reply memorandum [ECF No. 105], and Brookdale filed an affidavit confirming that Brookdale has not produced trade secret materials in any litigation, arbitration, or any other judicial or administrative proceeding [ECF No. 108]. The Undersigned held a one and a half-hour hearing on February 16, 2018 on this discovery dispute. [ECF No. 106].

For reasons outlined below, the Undersigned concludes that the requested SA Materials are not discoverable because their discovery does not meet the proportionality standard of Federal Rule of Civil Procedure 26(b)(1). At bottom, the so-called need for the discovery relates to Plaintiff's newly-articulated theory, which is different from the fundamental theory alleged in the Complaint. United States District Judge Cecilia M. Altonaga recently entered an order granting, in part, Brookdale's motion for judgment on the pleadings and denying Plaintiff's request (embedded in a

memorandum, as opposed to being properly framed in an actual motion) for leave to amend her Complaint. [ECF No. 97]. Therefore, Plaintiff's request is beyond the scope of permissible discovery when evaluated by the claims actually alleged in the Complaint, which, at this point, will **remain** the operative pleading and will not be amended.

Given this assessment, the Undersigned does not need to evaluate Brookdale's other two grounds for opposing the discovery request.

## Factual Background

On May 11, 2017, shortly after filing the Complaint [ECF No. 1], Plaintiff propounded document requests encompassing the SA Materials. [ECF No. 94-5 ("First Document Requests"), Request Nos. 3, 6, 9, 14-15]. Brookdale served its Objections and Responses to the First Document Requests, and expressly objected to production of the SA Materials on the grounds of proportionality and trade secret. [ECF No. 101-1, Response Nos. 3, 6, 9, 14-15, 21]. Plaintiff initially raised these objections to the Court at a hearing on July 21, 2017, and the Court requested that the parties submit source materials on the issue.

Subsequently, the parties conducted extensive and detailed negotiations regarding the scope and parameters of Brookdale's production. These negotiations culminated in the execution of two Memoranda of Understanding ("MOU"), and Plaintiff declined to pursue the SA Materials at that time.

The First MOU memorializes the parties' agreement that Plaintiff would serve interrogatories regarding Service Alignment in lieu of the various document requests that sought the SA Materials. In exchange, Brookdale agreed to produce, and then did produce certain documents. It later provided interrogatory answers explaining how the Service Alignment works, the variables, and how the output is used at the facility level to guide staffing decisions.

Brookdale also began producing the documents contemplated in the MOUs on November 13, 2017, and it finished producing nearly all documents by January 5, 2018. According to Brookdale, the parties also scheduled the Rule 30(b)(6) deposition of Brookdale's corporate representative for January 16, 2018 but Plaintiff's counsel unilaterally cancelled the deposition less than two days before it was to occur and has not rescheduled it. Brookdale contends that its representative was "fully prepared to testify on numerous Service Alignment topics." [ECF No. 101, p. 3].

Because the Undersigned's proportionality analysis depends, in significant part, on the relevance of the information at issue, quoting relevant terms from the operative Complaint will help in the evaluation.

Ms. Runton alleges in the Complaint that Brookdale's online and marketing materials are false and misleading. Those representations promote a "detailed" resident "assessment" program that "identifies the 'specifics of [the resident's] level of care' to 'offer individually tailored personal care options to perfectly suit their needs'" [ECF No.

1, ¶¶ 4-5] -- but Ms. Runton alleges that Brookdale "does not use the results generated by its 'Resident Assessment' system to determine or provide staffing at its facilities." [ECF No. 1, ¶ 5]. In addition, Ms. Runton further contends that the representations are false and misleading because, "on the contrary, as a matter of corporate policy and standard operating procedure, Brookdale staffs its facilities based on pre-determined labor budgets designed to meet corporate profit objectives." [ECF No. 1, ¶ 5]. The paragraph further alleges that Brookdale "conceals" this fact. [ECF No. 1, ¶ 5].

Paragraph 78 of the Complaint alleges that

> [t]he **overriding claim** presented by Plaintiff and the Class is founded on the question of whether Brookdale Senior Living, Inc.'s policy, practice and common course of conduct of charging its residents based on their assessed needs as determined by Brookdale's Resident Assessment System while **utterly disregarding these assessed needs** in staffing its facilities and, instead, staffing based on corporate profit goals constitutes an unfair or deceptive trade practice, violates applicable statutes and violates public policy.

[ECF No. 1, ¶ 78 (emphasis added)].

Similarly, Paragraph 78(b) of the Complaint alleges that the "overriding claims" in the case include, as a common issue of fact and law, whether Brookdale violated Florida's Deceptive and Unfair Trade Practice Act by "representing that its resident admission agreements confer the right to services to meet resident's assessed care needs when the actual services provided by Brookdale **do not involve or even consider** the assessed needs of its resident populations[.]" [ECF No. 1, ¶ 78(b) (emphasis added)].

Continuing with this same theme of the overriding claims, paragraph 107 of the Complaint alleges that Ms. Runton reasonably expected that "Brookdale would use the Resident Assessment System to set and provide facility staffing based on the amount of time Brookdale has itself determined is necessary to provide the care required for care needs established by its resident assessments." [ECF No. 1, ¶ 107]. This paragraph suggests that this reasonable expectation was not based on "the true facts." [ECF No. 1, ¶ 107].

Plaintiff's theme, its overriding claim, was emphasized and reinforced by Plaintiff's counsel both in a discovery hearing and in a memorandum of law submitted in opposition to an initial motion to dismiss. In that memorandum, Ms. Runton, in effect, repeated the allegation in her Complaint: "Importantly, Brookdale's care assessments translate into minutes of staff time to meet those needs, and minutes of staff time drive the price charged to each resident. In reality, Brookdale **uses fixed labor budgets** to staff its facilities, **disregards the staffing minutes** it charges its residents for and omits to disclose this material fact to its residents." [ECF No. 32, p. 1 (emphasis added)].

Likewise, at a July 21, 2017 discovery hearing before the Undersigned, Plaintiff's counsel asked to submit a memorandum of law to discuss how "we're comparing assessed needs that Brookdale assesses, which they translate into minutes, which drives

the price that people pay. **They don't staff according to that.** They staff based on staffing budgets." [ECF No. 47, pp. 66-67 (emphasis added)].

The central theme of Plaintiff's Complaint is that Brookdale ignores and does not consider the personal service assessments to determine staffing and care, contrary to representations made in marketing materials. Judge Altonaga relied on those allegations when ruling on the initial motion to dismiss and the later-filed motion for judgment on the pleadings.

In the July 10, 2017 Order on the motion to dismiss, Judge Altonaga emphasized, in the FDUTPA analysis, that Ms. Runton alleged that Brookdale used "profit margins to determine the staffing and care specifications," not the "**illusory** 'Resident Assessment System.'" [ECF No. 36, pp. 5, 7]. And in the breach of contract evaluation, she further highlighted that Plaintiff "alleges Defendant only uses the 'personal service assessments' to increase monthly charges and **neglects to use them** in determining staffing and care required by residents." [ECF No. 36, p. 7 (emphasis added)].

More than six months later, in a February 2, 2018 Order on Brookdale's motion for judgment on the pleadings, Judge Altonaga noted that the Complaint alleges that Brookdale "conceals from its residents, their family members, and the general public the fact it **determines staffing based on labor budgets** designed to meet corporate profit objectives." [ECF No. 97, p. 4 (emphasis added)]. The Court also noted that "Plaintiff would not have entered or returned to Brookdale Bayshore, nor would she

have paid as much money as she has, had she known that Brookdale would **not use its Resident Assessment Program to determine staffing levels."** [ECF No. 97, p. 5 (emphasis added)]. Similarly, the Order notes, when discussing the class allegations, that residents of Brookdale's facilities would in all reasonable probability not have "paid the high prices charged had they known Brookdale **did not and does not use its Residency Assessment System to set staffing levels at its facilities.**" [ECF No. 97, p. 5 (emphasis added)].

The Order also explained that Plaintiff brought the claims against Brookdale "for **failing** to uphold its promise to **determine staffing** at its facilities based on its **assessment of residents' needs**." [ECF No. 97, p. 6 (emphasis added)]. And it also noted that the termination provision "in no way contradicts the allegation Plaintiff expected **staffing** determinations would be **based on resident assessments**." [ECF No. 97, p. 15 (emphasis added)].

So there is no doubt about the overriding claim here. In fact, in its memorandum, Brookdale notes that Plaintiff's Complaint "alleges at least twenty times that Brookdale does not use the results generated by its 'Resident Assessment' system to determine or provide staffing." [ECF No. 101, p. 6].

Brookdale contends that Plaintiff is now seeking to engage in a significant change in its entire case by abandoning the overriding claim allegation and substituting

a new one, which Defendant contends is contrary to the repeatedly-invoked primary claim. Specifically, Brookdale argues as follows:

> Having learned through discovery that the resident assessments are in fact used in setting facility staffing, that pre-determined labor budgets do not dictate staffing, and that staffing is in fact provided based on the amount of time Brookdale has determined is necessary to meet each assessed need, Plaintiff seeks to advance a new and altogether different theory of wrongdoing. In particular, she seeks to justify her need for the SA Materials by now contending that although Brookdale allocates a certain amount of time to meet resident's assessed needs, those times are not "realistic."

[ECF No. 101, p. 6].

Plaintiff's memorandum does, in fact, abandon the argument that Brookdale ignored the resident assessment system to set staffing level and substitutes the new theory that Brookdale's times and algorithm based on such times may not have been "realistic." [ECF No. 94, p. 10]. She also argues that the discovery is needed to see if the algorithms and source code that were used are "flawed" and to "test the validity, reliability and accuracy of Brookdale's algorithms **used** to set staffing levels." [ECF No. 94, p. 10 (emphasis added)].

<u>**Applicable Legal Principles and Analysis**</u>

"Magistrate judges are afforded broad discretion in the resolution of nondispositive discovery disputes." *Tracy P. v. Sarasota Cty.*, No. 05-CV-927-T-27EAJ, 2007 U.S. Dist. LEXIS 33988, at *6 (M.D. Fla. May 9, 2007). Therefore, a district court judge "shall only modify or set aside the order if it is 'found to be clearly erroneous or

contrary to law.'" *Pendelbury v. Starbucks Coffee Co.*, No. 04-80521, 2007 U.S. Dist. LEXIS 94813, at *2 (S.D. Fla. Dec. 28, 2007). Clear error is a highly deferential standard of review, and a finding is clearly erroneous when "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Summit Towers Condo. Ass'n., Inc. v. QBE Ins. Corp.*, No. 11-60601, 2012 U.S. Dist. LEXIS 59633, at *3 (S.D. Fla. Apr. 5, 2012) (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005)).

An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2012 U.S. Dist. LEXIS 132860, at *5 (S.D. Fla. Sept. 18, 2012). "The district judge may not undo the magistrate judge's determination simply because it is convinced that it would have decided the case differently." *Id.* (internal quotation omitted). Therefore, "[t]his standard has been described as 'a very difficult one to meet.'" *Id.* (quoting *Thornton v. Mercantile Stores Co.*, 180 F.R.D. 437, 439 (M.D. Ala. 1998)); *see also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CV-81397, U.S. Dist. LEXIS 191396, at *4 (S.D. Fla. July 6, 2015) (citing *Pigott v. Sanibel Dev., LLC,* No. 07-0083, 2008 U.S. Dist. LEXIS 55806, at *5 (S.D. Ala. July 23, 2008)).

Pursuant to Rule 72(a), a party may object to a magistrate judge's decision of a nondispositive matter. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous

or is contrary to law." *Id.; see also* 28 U.S.C. § 636(b)(1)(A). This standard of review is "extremely deferential." *Sun Capital Partners,* U.S. Dist. LEXIS 191396, at *4 (citing *Tolz v. Geico Gen. Ins. Co.,* No. 08- 80663-CIV, 2010 U.S. Dist. LEXIS 3775, at *3 (S.D. Fla. Jan. 19, 2010)). "A finding is clearly erroneous only if 'the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed.'" *Sun Capital Partners,* U.S. Dist. LEXIS 191396, at *4 (quoting *Krys v. Lufthansa German Airlines,* 119 F.3d 1515, 1523 (11th Cir. 1997)).

Or, as the Seventh Circuit has put it: "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir. 1988). "The mere fact that a reviewing Court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Tolz,* 2010 U.S. Dist. LEXIS 3775, at *8 (quoting *Pendlebury,* 2007 U.S. Dist. LEXIS 94813, at **2-3). "[T]he 'clear error' exception must be rarely invoked." *Cox Enters., Inc. v. News-Journal Corp.,* 794 F.3d 1259, 1272 (11th Cir. 2015).

In the Undersigned's view, Plaintiff's new request for the SA Materials does not meet the relevance and proportionality hurdles of Rule 26.

The purported reason for Plaintiff's alleged need for the SA Materials is based on a theory never alleged in the Complaint. To be sure, a party is not required to "allege a

'specific fact' to cover every element or allege 'with precision' each element of a claim[.]" *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (internal quotations omitted).

But that's not what's happening here.

This is not a situation where a plaintiff seeks discovery concerning an alleged fact and the defendant resists discovery because that specific alleged fact is not clearly articulated in the Complaint's allegations. Instead, this involves a completely different theory -- and the new theory is contrary to the one asserted in the only Complaint ever filed in this case. Specifically, Plaintiff's claim, as articulated in the Complaint, is that Brookdale falsely represented that it used the assessed needs of its residents to determine staffing because it actually ignored, and never used, those assessments. In fact, the Complaint alleges that Brookdale utterly disregarded those assessed needs. But now, more than 9 months after the Complaint was filed and the day before the Court rejected her request to file an amended complaint, Ms. Runton has articulated (though not in a complaint or pleading) a new theory: that the assessments **were** in fact used but they were used in a flawed or corrupt manner.

Plaintiff cannot demonstrate that the SA Materials are important to this case by pointing to allegations that simply do not exist, particularly when she has already been denied leave to amend the Complaint. As the Eleventh Circuit has made clear, even under Rule 26's relevancy requirement, the court "has the authority to **confine**

**discovery** to the claims and defenses **asserted in the pleadings**" and "the parties [] have no entitlement to discovery to develop new claims or defenses that are **not already identified in the pleadings**." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (internal quotation omitted) (emphasis supplied).

As most federal practitioners know, or should know, Rule 26 was amended April 29, 2015, with a December 1, 2015 effective date. According to the Advisory Committee Notes for this recent amendment, information is discoverable under the revised rule "if it is relevant to any party's claim or defense and is proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2015 amendment. It further explains that "the present amendment restores the proportionality factors to their original place in defining the **scope** of discovery." Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2015 amendment.

The relatively new scope of discovery definition lists the factors a court should use when analyzing proportionality. One factor is a consideration of "the importance of the **issues at stake** in the action." Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2015 amendment. Another is "the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2015 amendment.

Rule 26(b) allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, No. 15-2599, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, *2015 Year-End*

*Report on the Federal Judiciary* 6 (2015)). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, No. 6:15-cv-1701-Orl-41TBS, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016).

When discovery does not relate to the actual issues in the case, then it does not meet the relevance and proportionality requirements. *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, No. 16-81795, 2018 WL 741371, at **3-4 (S.D. Fla. Feb. 6, 2018) (sustaining objection to plaintiff's discovery request for all of defendant's customers for all services and noting that "plaintiff has not shown that the identity and information regarding customers who never came into contact with the Google AdWord at issue, **the sole allegation of infringement**, have any relevance to the issues or liability or of damages[.]") (emphasis added).

Proportionality "focuses on the marginal utility of the discovery sought." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) (internal citations omitted). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Id.* (internal citation omitted). As noted in the recent amendment to Rule 26(b)(1), "multiple factors" are relevant in assessing proportionality and "some cases may require a detailed balancing of these factors and the making of fine distinctions." *Id.*

Because relevance is evaluated as part of a proportionality analysis of the requested discovery, the merits of the claim are considered. *See generally Sumpter v. Metro. Life Ins. Co.,* No. 1:13-cv-0347, 2016 WL 772552, at *4 (S.D. Ind., Feb. 29, 2016) (denying motion to compel discovery evaluated under the new, amended version of Rule 26 after noting that the "claims appear doomed" substantively).

As outlined above, the requested discovery is not needed for the claims actually at issue. If the Court had permitted Plaintiff to amend, and if Plaintiff had filed an amended complaint alleging the new theory (i.e., that the information was used but was flawed or used in a corrupted way), then the discovery analysis would be different. But that did not happen, and Plaintiff must rely on the Complaint she previously filed, not the amended one she now *wants* to file (but cannot).[1] The discovery is not relevant.[2]

---

[1]    By making this point, the Undersigned is not encouraging Plaintiff to file a formal motion for leave to file an amended complaint, nor am I suggesting, even implicitly, that Judge Altonaga might permit the filing of an amended complaint. Instead, I am simply noting the reality that Plaintiff appears forever linked to the current Complaint in this lawsuit because the Court recently turned down a request for leave.

[2]    Although "Rule 26(b) has been amended to alter the **scope** of discoverable information . . . . Those changes, although substantive and substantial, do not change the *definition* of 'relevance.' Instead, they emphasize requirements already present in the Rules, like proportionality." *Miller v. Garibaldi's, Inc.,* No. CV414-007, 2016 WL 7257035, at *2 n.1. (S.D. Ga., Dec. 15, 2016) (emphasis added); *see* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality[.]"); *Sibley v. Choice Hotels Int'l,* No. CV 14-634, 2015 WL 9413101, at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been

In addition to confronting the reality that Plaintiff's new discovery request is based on a theory contradicted by the allegations of her Complaint, Plaintiff must also address the fact that Brookdale's interrogatory answers already provide detail about how the Service Alignment System guides staffing decisions. For example, Brookdale's interrogatory answers provide information on that topic.[3] [ECF No. 101-4]. Similarly, Brookdale produced (a) labor detail reports for 25 sampled facilities over a two-year period; (b) acuity reports for 25 sampled facilities over a two-year period; (c) personal service assessments -- the resident assessments -- and the resulting Personal Service Plan for every resident at the facility where Plaintiff was a resident over a one-year period and for a sampling of other residents at the other 24 sampled facilities; and (d) Kronos reports, which identify the names, caregiving roles and punch in/out times for hourly employees at all 25 sample facilities over the sampled period.

Finally, Brookdale contends that producing the SA Materials will impose a significant burden because the information contains trade secrets and other highly proprietary information. It argues that disclosure would materially threaten its business

---

incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii).").

[3]     Brookdale filed a redacted version of its interrogatory answers, so the Court cannot know for certain the scope and comprehensiveness of all the answers. Nevertheless, Plaintiff's reply in no way takes issue with Brookdale's representation that it "provided fulsome answers detailing how Service Alignment operates, the relevant input and output variables, and how the output is used at the facility level in guiding staffing decisions." [ECF No. 101, p. 4].

interests. Analyzing burden is one of the proportionality factors: "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Although the Undersigned is not necessarily concluding that Brookdale could never be compelled to produce the trade secrets component of the SA Materials, I find it significant that Brookdale has *never* produced the information in any type of matter. I also appreciate Plaintiff's argument that Brookdale's trade secrets are not automatically immune for discovery and that the existing confidentiality agreement would generate protection for Brookdale.

On the other hand, Brookdale has a legitimate concern over production to Plaintiff's expert, in particular, because it says that he is developing his own system and needs the information in Brookdale's materials to fill in the gaps. Furthermore, I do not find irrational Brookdale's argument that Plaintiff's expert, despite his best efforts, cannot completely "unlearn" what he would see in the materials if they were produced. Brookdale argues that Plaintiff's computer modeling expert, Dale Schroyer, might subconsciously retrieve the information even if doing his best to maintain confidentiality. To be sure, this concern could conceivably be made about *every* person who reviews documents and other materials pursuant to a confidentiality agreement or protective order, but Mr. Schroyer is reportedly involved in the design of a competitive staffing system for this industry.

## Conclusion

As explained by another federal magistrate judge, discretion to rule on discovery disputes "denotes the absence of a hard and fast rule." *Am. Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2010 WL 3397362, at *2 (N.D. Ill., Aug. 25, 2010) (internal citations omitted). That same judge also noted that, "[i]ndeed, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion." *Id.*

I have decided to exercise the considerable discretion afforded to magistrate judges in discovery disputes by rejecting Plaintiff's efforts to obtain Brookdale's SA Materials under her current version of the Complaint and based on Rule 26(b)'s definition of the permissible scope of discovery.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on February 27, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

 **Copies furnished to:**
Honorable Cecilia M. Altonaga
All counsel of record