## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:17-cv-60664-CMA

JULIE GODDARD, as curator of the
ESTATE OF GLORIA RUNTON, on her behalf
and all others similarly situated,

      Plaintiff,

v.

BROOKDALE SENIOR LIVING INC.,

      Defendant.

_____/

### MOTION FOR FINAL APPROVAL OF CLASS ACTION
### SETTLEMENT, APPROVAL OF ATTORNEYS' FEES AND EXPENSES, AND
### INCOPROATED MEMORANDUM OF LAW

### INTRODUCTION

      Plaintiff Julie Goddard, as curator of the Estate of Gloria Runton on behalf of herself and the Runton Estate and on behalf of the Settlement Class,[1] hereby requests entry of an order granting Final Approval of the class action settlement as set forth in the parties Stipulation and Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), which the Court preliminarily approved on  November 13, 2019 (D.E. 136).

### INTRODUCTION

      Class Counsel is proud to present for final approval this Settlement, which will redress alleged injuries suffered by residents of assisted living and memory care facilities owned and/or operated by a Brookdale affiliate in the State of Florida ("Brookdale ALFs") as a result of the alleged misrepresentations made by Brookdale regarding the determination and sufficiency of

---

[1] Capitalized terms used here appear as defined terms in the Settlement Agreement and take on the same meaning as set forth therein.

staffing and care at Brookdale ALFs.  The Settlement will compensate Settlement Class Members by providing cash payment to those who submit a claim form showing they resided at a Brookdale ALF during the class period and are not subject to a contractual arbitration agreement.  The Settlement will also provide injunctive relief by requiring changes to the residency agreements and website applicable to Brookdale ALFs.  The Settlement is the result of rigorous, arm's-length negotiations by the Parties, with the aid of mediator Harry R. Schafer, and involved the resolution of highly disputed issues of fact that carried the risk of protracted, costly, and potentially unsuccessful litigation.

The Settlement marks the end of this turbulent litigation and, once approved, will provide significant relief to the Settlement Class Members.  The benefit conferred under the Settlement to the Settlement Class Members is confirmed by the fact that, as of the date of this filing, the parties have received *no objection* to final approval of the Settlement.  For achieving this outcome for the Settlement Class, Plaintiff requests that the Court approve payment to Class Counsel of their attorneys' fees and expenses, which will be paid by Brookdale beyond and outside of the monetary benefits to the Settlement Class.

## **FACTUAL BACKGROUND**

### 1.    **The Litigation**

Affiliates of Brookdale own and/or operate assisted living and memory care facilities in Florida.  Plaintiff Gloria Runton filed this putative class action against Brookdale for violation of the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, *et seq*., breach of contract, and declaratory and injunctive relief, alleging that Brookdale engages in a scheme to defraud residents by making misrepresentations regarding the determination and sufficiency of the staffing at Brookdale ALFs.  *See* Complaint (D.E. 1).  According to Plaintiff's Complaint, Brookdale

promises residents and their families that its use of a Resident Assessment Program enables Brookdale ALFs to appropriately determine and provide the level of care needed to meet residents' assessed needs.  As alleged, Brookdale ALFs may charge a Community Fee Payment as part of the admission agreement, which Plaintiffs and Class Members pay based on the expectation that Brookdale ALFs will be staffed sufficient to meet the collective assessed needs of the facility residents.  The Complaint alleges, however, that as a matter of corporate policy and standard operating procedure, Brookdale ALFs are staffed based on pre-determined labor budgets designed to meet corporate profit objectives, a policy that is not disclosed to incoming residents.  The Complaint further alleges that Brookdale's profit-driven staffing practices results in a systematic failure to staff Brookdale ALFs in a manner sufficient to meet the assessed care needs of the residents.

Brookdale moved to dismiss the Complaint on May 25, 2017, arguing that the Complaint contained only unsubstantiated, conclusory allegations and therefore failed to state a cause of action as a matter of law.  (D.E. 23)  Brookdale also moved to strike the class allegations, arguing that the class was not adequately defined and clearly ascertainable.  *Id.*  The Court denied the Motion to Dismiss and Strike Class Allegations on July 10, 2017.  (D.E. 36)  Brookdale filed its Answer and Affirmative Defenses on July 24, 2017, as Amended on September 1, 2017, denying the allegations and asserting various defenses.  (D.E. 60) On February 2, 2018, after the close of the pleadings, the Court granted in part Brookdale's Motion for Judgement on the Pleadings as to one of the two contracts at issue in Plaintiff's breach of contract claim (D.E. 97).  All other claims asserted by Plaintiff remain for trial.

Throughout the course of the litigation, the parties engaged in significant discovery, including the production of over 60,000 documents, several depositions, detailed interrogatory

responses, and several highly contested discovery hearings.  Amongst the discovery produced were: (a) two years of "acuity reports" across 25 sampled facilities, reflecting the acuity needs of the resident population on both an individual and aggregate basis; (b) two years of "Kronos staffing reports" across 25 sampled facilities, reflecting actual staffing levels by hour and type on a daily basis; (c) two years of "Census Reports" across 25 sampled facilities, reflecting the number and type of residents at the sampled facilities; (d) two years of "Labor Detail Reports" across 25 sampled facilities, reflecting the staffing benchmarks set by Brookdale's Service Alignment Software, the actual staffing levels at the facilities, and the difference between the two on a daily basis; (e) a wide variety of marketing materials used by the representative facilities; (f) various sample resident contracts and resident assessments; (g) a variety of training materials, both as it relates to resident assessments and the use of Brookdale's Service Alignment Software; and (h) emails from a sampling of facility directors and high level managers.  Brookdale's discovery revealed that Brookdale's Service Alignment Software, which sets staffing benchmarks for Brookdale ALFs, does consider residents' assessed needs when computing the benchmarks. However, considerable dispute remained as to whether and how this impacted the merits of Plaintiff's claims, including whether the benchmarks generated by Service Alignment Software were sufficient to meet the care needs of the residents.

Following the death of Ms. Runton, on August 14, 2018, the Court granted an Unopposed Motion to Substitute Party Julie Goddard, the curator for Ms. Runton's estate.  (D.E. 124).  On October 5, 2018, the Court denied Goddard's Motion to Dismiss with Prejudice the Complaint and ordered the parties to engage in a good faith effort to resolve outstanding issues. (D.E. 127).  After Plaintiff's original counsel withdrew, on August 5, 2019, the Court granted a Stipulated Motion for Substitution of Counsel substituting Gail A. McQuilkin and her firm Kozyak Tropin &

Throckmorton, LLP as counsel of record for Plaintiff and the putative class.  (D.E.  133)

On August 19, 2019, the parties participated in a formal day-long mediation of this matter before mediator Harry R. Schafer, Esq.  The parties reached a settlement-in-principle at the mediation and signed a binding term sheet that identified the material terms of the Settlement. Following the mediation, the parties engaged in further negotiation over the final terms and form of the Settlement and ultimately agreed to the terms that have been incorporated into the attached Stipulation and Class Action Settlement Agreement.  *See* Exhibit A.

**2.**　　　**The Settlement Terms and Agreement**

　　**A.**　***The Proposed Settlement Class***

The Settlement provides relief to "all persons who entered a Brookdale ALF in the State of Florida between April 4, 2013 and November 13, 2019 (the preliminary approval date), whether currently or former residing, and who contracted with a Brookdale ALF for assisted living or memory care services but for whom there does not exists a signed arbitration agreement applicable to the services provided to them at a Brookdale ALF."  *See* Ex. A § III, ¶ 3.1.  Excluded from the Settlement Class are: (a) Brookdale and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (b) any Claimant who files a valid, timely Request for Exclusion; (c) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (d) the judges to whom the action is assigned and any members of their immediate families.  *Id.*

　　**B.**　***Monetary and Injunctive Relief***

The Settlement affords Settlement Class Members monetary and non-monetary relief.  *See* Ex. A, §§ V and VI.  Although Brookdale denies liability and alleges that it has acted in accordance with all applicable representations, agreements and governing law, Brookdale has concluded that

there are risks to the continuation of the litigation and trial and it is therefore beneficial to settle this action with a cash award and other relief to Settlement Class Members.  Thus, Brookdale will pay each Settlement Class Member who submits a timely and approved Claims Form a cash award of 15% of the Community Fee Payment for each year of their residency at a Brookdale ALF, prorated by the number of days that the resident resided at the facility.  Settlement Class Members whose Community Fee Payment was $0, inclusive of any applicable rebates and discounts, will be entitled to a flat reimbursement of $25.   Accordingly, a refund or payment of 15% of the Community Fee Payment or $25 if no Community Fee Payment was paid, will fairly and adequately compensate Settlement Class Members.  Should any Settlement Class Member believe that their actual damages exceed the offered monetary relief,  he or she was free to opt-out of the Settlement Class and pursue claims in individual litigation.  *See* Ex. A § XI, ¶ 11.1.

The non-monetary relief provided by the Settlement will put an end to any alleged misunderstanding by incoming residents regarding the connection between a resident's assessed needs and the determination of staffing at Brookdale ALFs.  In particular, Brookdale will include language in Section I.B of its standard Florida residency agreement and on its webpage located in the area that discusses residents' assessed needs stating as follows:

> We make no promise or representation regarding whether or how a resident's assessed needs impact staffing determinations at a given facility.  There is no guarantee that an increase in a resident's assessed needs will result in an increase in staffing at the resident's facility.

> *Id*. at § VI, ¶ 6.1 and 6.2.

**C.  *Release of Claims against Defendant***

In exchange for the relief provided by the Settlement, Settlement Class Members will release Brookdale and any and all of their current or former parents, affiliates, subsidiaries, predecessors, and successors, as well as any of their current or former officers, directors, trustees,

overseers, employees, agents, attorneys, insurers, reinsurers, auditors, accountants, committees, fiduciaries, administrators, actuaries, representatives, retained experts, and naturel person trustees, from all claims of every nature and description, including unknown claims there were or could have been raised in the litigation.  In particular, the released claims include claims regarding the staffing and care provided at Brookdale ALF, including the type, nature, sufficiency, quantity, or quality of the staffing as well as any promises, representations, or statements made to Settlement Class Members regarding staffing and care.  **However, the released claims do not include any claims for personal injury, including any personal injury claims arising from allegedly insufficient care**.  *See* Ex. A § II, ¶ 2.34.

Once the Settlement is final, Settlement Class Members and the parties will have expressly acknowledged that the litigation will be dismissed with prejudice and all released claims as defined in the Settlement Agreement thereby conclusively settled, compromised, satisfied and released, including known and unknown claims up until the date of the release.  The parties also agree that the release is applicable to all Settlement Class Members whether or not they submit a Claim Form.  As the Settlement Class does not include residents at Brookdale ALFs for whom there exists a signed arbitration agreement, the release does not apply to those residents.  *Id.* at § IV, ¶ 4.5.  The Settlement sets forth a specific and detailed procedure for determining whether a resident of a Brookdale ALF is a Settlement Class Member and is therefore subject to the terms of the releases.  *See id.*

### D.  *Class Notice and Claims Process and Settlement Administration*

The Court preliminarily approved the Settlement and certified the proposed Settlement Class on November 13, 2019. (D.E. 136).  The Court approved all terms, including the proposed Notice and notice plan, and ordered the Parties to mail the Notice, Claim Instructions, and Claim

Form to all Settlement Class Members.

As set forth in the Declaration of Sydney Gustafson, the Settlement Administrator BrownGreer sent Settlement Class Members the Court approved Class Notice of the Settlement, a Claim Form and Claim Form Instructions. *See* Exhibit B, Declaration of Sydney Gustafson ("Gustafson Dec.") at ¶¶ 13-14. Notice was sent by U.S. mail to Settlement Class Members at their last-known addresses in the forms attached to the Settlement as Exhibits A and B and on the Settlement Administrator's website in the form attached as Exhibit C. *See id.* For Settlement Class Members who currently reside at a Brookdale ALF, Class Notice was made by direct delivery to those residents through the mailbox belongs to the current resident, if one exits. *Id.* Otherwise, Class Notice was sent through U.S. Mail. *Id.* Curing efforts and second-effort notices were also made when notices were returned as undeliverable. *Id.* ¶¶ 15-16. Notice was also provided on a website maintained by the Settlement Administrator, a link to which appeared on Brookdale's webpage. *Id.* ¶ 17. The Class Notice was mailed and posted no later than sixty (60) days after the Court granted preliminary approval of the Settlement. *Id.* ¶ 14. The Settlement Administrator mailed a total of 29,760 Notice Packets. *Id.* The Settlement Administrator also established a toll-free telephone line that is accessible to Settlement Class Members who seek additional information, and a website on which Settlement Class Members may download and print or e-sign and upload a Claim Form and review the Settlement Agreement and its exhibits. *Id.* ¶¶ 8-9.

To obtain relief from Brookdale through the Settlement Administrator, each Settlement Class Member is required to submit the Claim Form postmarked or otherwise submitted on or before the Claim Deadline, which will fall sixty (60) days after the Final Approval of the Settlement Agreement. *See* Ex. A § 2.8. Each Settlement Class Member will be required to submit

on the Claim Form the name of the Florida Brookdale facility at which the Claimant resided or resides, dates of residence, and a statement that an executed arbitration agreement does not exist for the Claimant. *See id.* § VIII, ¶ 8.8.  The Claim Form explains that if the Claims Administrator determines from Brookdale's records that an executed arbitration agreement does exist for the Claimant, the Claim will be rejected.  If the Claimant has died, his or her Designated Representative is required to provide a death certificate or a notarized statement that the Designated Representative is the authorized representative of the Claimant's estate. *See id.*

The Claim Forms will be reviewed and approved by the Settlement Administrator, who will have the discretion to reject the Claim if the Claimant is not a member of the Settlement Class. *See* Ex. A § VIII, ¶ 8.10.  Prior to rejecting any Claim, the Settlement Administrator must provide to Class Counsel the Claim Form and reasoning for the Claim rejection so that the parties can cooperate in resolving the claim and attendant data. *Id.*, *see also* § XV, ¶ 15.1.

**E.  *Class Counsel Fees and Expenses and Named Plaintiff Case Contribution Award***

The parties have stipulated that Brookdale will pay Class Counsel's attorneys' fees based on lodestar and expenses they have incurred in the case from the date they were retained, including the attorneys' fees associated with obtaining final approval for this Settlement and service as Class Counsel. *See* Ex. A. § X, ¶ 10.1.  Pursuant to this agreement, Class Counsel's application for attorneys' fees is $87,000.00 and expenses of $3,480.61.

**G.  *Opt-Outs and Objections***

Settlement Class Members had the opportunity to opt-out of the Settlement Class by sending a written request for exclusion to the Settlement Administrator, postmarked no later than February 22, 2020, thirty (30) days prior to the March 23, 2020 Final Approval Hearing. *See id.* § XI, ¶ 11.1.  In addition, Settlement Class Members had the opportunity to object to the settlement

by filing a written objection with the Clerk of the Court and mailed to Class Counsel and Defense

Counsel at the address listed in the Settlement Agreement no later than February 22, 2020, thirty

(30) days prior to the Final Approval Hearing.  *See id.* § XII, ¶ 12.1.  As of the date of this filing,

no objections have been filed with the Court in accordance with the objection procedure.

Furthermore, only five Settlement Class Members have opted out of the Settlement.  *See* Gustafson

Dec. ¶ 23.

## **ARGUMENT**

## I.      **THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

Settlement "has special importance in class actions with their notable uncertainty,

difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient

use of judicial resources and achieve the speedy resolution of justice[.]"  *Turner v. Gen. Elec. Co.*,

No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006).  For these

reasons, "there exists an overriding public interest in favor of settlement, particularly in class

actions that have the well-deserved reputation as being most complex."  *Lipuma v. Am. Express

Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (Altonaga, J.) (citation omitted); *see also In re

U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992).

"Approval is generally a two-step process[.]"  *Holman v. Student Loan Xpress, Inc.*, No.

8:08-CV-305-T23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (quoting David F.

Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed. 2008); *see also, e .g., Fresco v.

Auto Data Direct, Inc*., 2007 WL 2330895, at *4 (S.D. Fla. 2007) ("Approval of a class action

settlement is a two-step process.").  Preliminary approval is the first step, requiring the court to

"make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement

terms." *Fresco*, 2007 WL 2330895, at *4.  The Court has already granted preliminary approval of

the Settlement.  (D.E. 136)

In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval.  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 240119, at *2 (S.D. Fla. June 15, 2010).  Courts in this circuit consider the following factors when considering final approval of a class action settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.  *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).  "In assessing these factors, the Court should be hesitant to substitute … her own judgment for that of counsel.'"  *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)).  Analysis of these factors compels the conclusion that the Court should give final approval to the Settlement.

## A. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations Among Experienced Counsel

The first factor for final approval requires the Court to consider whether the settlement was obtained by fraud or collusion among the parties and their counsel.  Courts begin with a presumption of good faith in the negotiation process.  *See Saccoccio v. J.P. Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion"); *Hemphill v. San Diego Ass'n of Realtor, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement").

The settlement terms in this case are the product of significant give and take by the settling

parties and were negotiated at arm's length.  The parties participated in an intensive day-long mediation with Harry R. Schafer, Esq., a well-respected mediator with significant experience resolving complex suits.  Mr. Schafer and the parties participated in an in-person session on August 19, 2019, at which time a term sheet was prepared and executed by the parties.  After the parties reached a settlement-in-principle at the formal mediation session, Mr. Schafer aided the parties in their continued negotiation over the terms of the Settlement.  After several additional weeks of negotiation, the parties documented their agreement in a finalized and executed twenty-five (25) page Stipulation and Class Action Settlement Agreement on November 8, 2019.  *See* Ex. A.  The very fact of Mr. Schafer's involvement weighs in favor of final approval and corroborates the presumption of good faith in the negotiation process.  *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion).

Although there have been no objections to the Settlement, Meghan Bright has sought to intervene in this lawsuit to object to the Settlement on the grounds that is the alleged product of collusion.  (D.E. 148)  Ms. Bright is the representative of a deceased, former resident of a Brookdale ALF who would otherwise be a Settlement Class Member.  However, Ms. Bright chose to opt out of the Settlement on the resident's behalf because of similar claims she has asserted against Brookdale.[2]  While Ms. Bright's efforts (made by the same counsel who previously represented Plaintiff) contravene the fundamental principle that a party who has opted out of a

---

[2] *See* Gustafson Dec. ¶ 23; D.E. 148.

settlement lacks standing to object to the settlement,[3] her arguments are unavailing in any event.

Ms. Bright criticizes the "Settlement's broad release," which she contends will "thwart her from achieving [the relief she seeks] in the *Bright* litigation." (D.E. 148 at 3). Yet, it is well settled that a class settlement can release "not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) (published before October 1981); *see also Lipuma*, 406 F. Supp. 2d at 1317 (class settlements "may include claims not presented and *even those which could not have been presented* as long as the released conduct arises out of the identical factual predicate as the settled conduct") (emphasis added) (quoting *Wal-Mar Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), which approved of a settlement that released "rate selection claims that were not a part of the case" because they were based on "the same underlying factual predicate"). To be sure, "[t]here is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded. *In fact, most settling defendants insist on this.*" *Beradinelli v. General Am. Life Ins. Co.*, 357 F. 3d 800, 805 (8th Cir. 2004) (emphasis added).

Here, the releases contained in the Settlement arise out of the same factual predicate as the conduct at issue in *both* the original and amended complaints. In particular, the factual predicate of both complaints is that Brookdale made alleged misrepresentations regarding the determination and provision of staffing at Brookdale ALFs, that Brookdale actually staffs based on pre-determined labor budgets and corporate profit goals, that this resulted in a failure to staff Brookdale

---

[3] *See* Newberg on Class Actions § 13.23 (5th ed.) ("Class members who opt out of the class...are no longer considered class members, and hence Rule 23 does not give them standing to object to the settlement.").

ALFs "in a manner sufficient to meet the assessed needs its residents," and that residents were harmed by virtue of having paid a Community Fee in reliance on the "reasonable expectation that Brookdale would staff its facilities to meet the collective assessed needs of each facilities' residents." Compl. ¶¶ 7, 8, 31 (D.E. 1); Amended Complaint, ¶¶ 7, 8, 31. (D.E. 137.1)

Consistent with these allegations, the Settlement releases all claims (except for personal injury claims) "regarding the staffing and care provided at Brookdale ALFs, including but not limited to, the type, nature, sufficiency, quantity, or quality of the staffing and care provided at Brookdale ALFs, as well as any promises, representations, or statements made to Settlement Class Members regarding the staffing and care at Brookdale ALFs." Ex. A § II, ¶ 2.34. Thus, as in *Lipuma*, the "claimants" are one and the same (*i.e*., residents of Brookdale ALFs) and any party aggrieved by Brookdale's alleged misrepresentations regarding the determination and provision of staffing and/or the alleged failure to staff Brookdale ALFs in a manner sufficient to meet the assessed needs of the residents "would also be aggrieved" by alleged problems with the type, nature, sufficiency, quantity, or quality of the staffing and care provided at Brookdale ALF, as well as any promises, representations, or statements made to Settlement Class Members related thereto. 406 F. Supp. 2d at 1318. Furthermore, as in *Lipuma*, each class member who incurred a Community Fee payment in reliance on Brookdale's alleged misrepresentations regarding the determination of staffing "will receive consideration for the relief of their claims." *Id*. At bottom, Brookdale sought to negotiate a global peace—ensuring that all possible claims arising out of staffing representations were released. The experienced judgment of Class Counsel in this case consented, given the risks and costs associated with protracted litigation. This is not evidence of collusion. On the contrary, it is both typical and appropriate in the class settlement context.

Ms. Bright next criticizes the purported "eleventh-hour expansion of the scope of the claims via the filing of the Amended Complaint."  (D.E. 148 at 3).  This too is not evidence of collusion.  The amendment of the Complaint did not alter the factual predicate for this lawsuit (*i.e.*, alleged misrepresentations regarding the determination and sufficiency of staffing), nor does it impact the releases in the Settlement.  The amendment was not necessary to justify the scope of the releases because, as pointed out above, the releases arise out of the same factual predicate as the conduct alleged in the original complaint.  Rather, as clearly set forth in the Settlement, the parties effectuated the amendment simply to conform the pleadings to the undisputed evidence produced in discovery (*i.e.*, that Service Alignment does consider residents assessed needs in setting staffing benchmarks).  *See* Ex. A § I, ¶ 1.7.  Because the amendment does not alter the factual predicate for this action, nor does it impact the scope, nature or fairness of the Settlement (or its releases), it too does not establish any sort of collusion between the parties.  *See LiPuma*, 406 F. Supp. 2d at 1318 (holding that it was "not unreasonable for [the defendant] to have requested that the pleading be amended to add express language that would resolve any future claims concerning the 'spread' claim," a claim that was not initially part of the case, since the claims were based on the same factual predicate).

Last, Mr. Bright contends that the "Runton Estate has sought to abandon this litigation." (D.E. 148 at 7).  While the Runton Estate had, at one point, sought to dismiss the lawsuit, negotiations regarding such a dismissal had stalled and Plaintiff was ready, willing and able to continue the litigation.  In fact, she retained new counsel experienced in class actions to do just that.  Yet, after conferring extensively with new counsel on case strategy for going forward, Plaintiff more fully understood the risks attendant in continued litigation and the benefits that a class settlement could provide to both her and the class at large.  Thus, rather than continue with

protracted, costly and risky litigation, Plaintiff chose to engage in class settlement negotiations on the recommendation of counsel.  Plaintiff's decision, which has resulted in concrete benefit to the class, was a reasonable and appropriate course of action for a class representative and does not demonstrate any sort of collusion.

### B.  The Complexity, Expense and Duration of the Litigation

The second factor requires the Court to consider the complexity, expense and duration of the litigation.  This factor weighs in favor of settlement where the claims and defenses are complex and continuing to litigate the claims "would have been time-consuming and expensive."  *Hall v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 177155, at *16 (S.D. Fla. Dec. 17, 2014).  Here, the claims and defenses are highly complex requiring the Court to consider issues including, without limitation: (a) whether the Community Fee payment constituted an actual injury under Article III; (b) whether there was adequate staffing across over 100 facilities and how existing regulatory oversight impacts that determination; (c) the level of control exercised by Brookdale over Brookdale ALFs; and (d) whether class members were exposed to the alleged misrepresentations. Continuing to litigate these claims would have been both time-consuming and expensive.  Even if Plaintiff prevailed at the class certification proceedings, a class trial and the appellate process could go on for years.

In contrast, the Settlement provides immediate and substantial monetary and injunctive relief to the class.  As in *Lipuma*, the "Settlement will alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing." 406 F. Supp. 2d at 1324.  Accordingly, the second factor weighs in favor of final approval.  *See id.*; *see also e.g. In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.,* 910 F. Supp. 2d 891, 932 (E.D. La. 2012) ("even assuming litigation could obtain

the results that this Settlement provides, years of litigation would stand between the class and any such recovery.  Hence, this second   . . . factor weights strongly in favor of granting final approval to the Settlement Agreement.").

### C.  The Stage of the Proceedings

The third factor requires the Court to consider the stage of the proceedings and "the amount of discovery competed."  *Hall*, 2014 U.S. Dist. LEXIS 177155, at *17.  Courts routinely find that this factor weighs in favor of approval where the parties have "engaged in significant discovery," such that they are "well well-informed of the strengths and weaknesses of their claims."  *Id*.; *see also Lipuma*, 406 F. Supp. 2d at 1325 (settlement approved where the parties "were at a proper juncture with sufficient information to settle this action"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (settlement approved where the district court properly recognized that parties had engaged in an extensive exchange of documents and other information).

Here, the parties' negotiations over the Settlement were informed by the significant discovery that took place in this action.   In fact, the Settlement was reached just before the close of discovery.  *See* D.E. 89 (setting May 31, 2018 deadline for the close of all discovery) and D.E. 120 (April 19, 2018 order staying case).  During the course of discovery, Brookdale responded to numerous requests for data and other information relevant to Plaintiff's claims, including discovery showing (a) how staffing levels at Brookdale ALFs are determined, (b) the staffing benchmarks and actual staffing levels at a sampling of facilities over a two-year period (including the discrepancy between the two), and (c) the assessed needs for the residents at those same facilities over that same time period.  Furthermore, the Plaintiffs' guardians and representatives were deposed during the action.

Finally, negotiations were also influenced by Court rulings and comments in the case,

including the Court's granting in part of Brookdale's Motion for Judgment on the Pleadings, the Court's sustaining Brookdale's objections over production of the Service Alignment Software, and the Court's multiple comments on the record that it did not believe the case was amenable to class treatment.

Accordingly, in reaching the Settlement, the parties had sufficient information to assess the strengths and weaknesses of the claims. The third factor weighs in favor of final approval.

### D.  Settlement Will Save the Class the Cost of Risky Further Litigation

The fourth factor considers the probability of success on the merits. "Plaintiffs' likelihood of success at trial depends heavily on whether the class would be certified if the settlements were not approved." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). Here, the data and information produced by Brookdale suggested that manageability concerns in this case could have precluded certification of a litigation class. For instance, Brookdale produced discovery showing the way staffing is determined at Brookdale ALFs. The discovery revealed that during the class period, the staffing decisions at some Brookdale ALFs were informed by benchmarks set by Brookdale's Service Alignment Software, whereas other Brookdale ALFs were not provided with any such benchmarks. Furthermore, even as to those facilities where staffing decisions were guided by Service Alignment benchmarks, the discovery revealed obvious discrepancies between the Service Alignment benchmarks and the actual staffing levels at Brookdale ALFs, confirming Brookdale's assertion that Brookdale ALFs have the ultimate discretion to determine staffing and that staffing determinations vary across time and facility. These facts, collectively, created substantial risk that Plaintiff would not be successful in showing that there exists a class-wide method to prove either liability or damages for purposes of certifying a litigation class.

Brookdale also produced discovery showing that most residents are subject to executed arbitration agreements, creating individualized issues if the class had been defined to include all residents of Brookdale ALFs.  By excluding those who are subject to an executed arbitration agreement, the Settlement avoids individualized issues associated with whether a particular resident must be compelled to arbitrate his or her claims against Brookdale.

Plaintiff also faced hurdles at the merits stage of the litigation.  For instance, as the discovery revealed, Brookdale's Service Alignment Software does in fact consider residents' assessed needs in setting staffing benchmarks.  Whether and how this bear on the merits of Plaintiff's claims raises unsettled issues that created risk in pursuing the claims to trial.  Where, as here, "there would be substantial risks and uncertainties for all parties if the case were to go to trial. . .  and the class members faced a very real risk of not prevailing at all with regard to the merits," whereas a settlement provides claimants with "meaningful monetary awards," this factor weighs in favor of finding that the settlement is fair and reasonable.  *Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, 2006 U.S. Dist. LEXIS 60938, at *8-9 (M.D. Fla. Aug. 28, 2006); *see also Lipuma*, 406 F. Supp. 2d at 1322 ("All of these uncertainties in outcome strongly favor approval of a negotiated settlement"); *Cifuentes v. Regions Bank*, 2014 U.S. Dist. LEXIS 37458 at *12 (S.D. Fla. Mar. 20, 2014) (approving class settlement "where there was great risk facing Plaintiffs and the Class that could have resulted in Plaintiffs and the Class recovering far less than the [settlement award] or, far worse, nothing at all").

Thus, the fourth factor weighs in favor of approval.

**E.  The Settlement Falls Squarely within the Range of Reasonableness.**

The fifth factor requires the Court to consider the range of possible recovery.  Here, the Settlement provides monetary and injunctive relief to the Settlement Class Members that falls well

within the range of possible recovery.  Courts routinely hold that settlements providing the class with even a small percentage of the recovery sought in litigation are reasonable, considering the attendant risks of litigation.  *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (approving recovery of $.20 per share where desired recovery was $3.50 a share and stating "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is unfair or inadequate[.]"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales).  As one court noted, a "settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 542 (S.D. Fla. Jan. 9, 1988); *see also Johnson v. Brennan*, 2011 WL 4357376 at *11 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Plaintiff sought recovery of the Community Fee payment made by residents upon entry to a Brookdale ALF.  (*See* D.E. 1 ¶ 95).  Upon final approval of the Settlement, Brookdale will pay each Settlement Class Member who submits a timely and approved Claim Form a cash award of 15% of the Community Fee Payment for each year of their residency at a Florida Brookdale facility, prorated by the number of days that the resident resided at the facility.  Settlement Class Members whose Community Fee Payment was $0, inclusive of any applicable rebates and discounts, will be entitled to a flat reimbursement of $25.  This amount provides all Settlement Class Members with at least a percentage of the recovery sought, although it could provide all— or even more—than the recovery sought in many cases.  This is eminently reasonable, particularly given that an evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties because "the very essence of a settlement

is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation marks omitted); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("compromise is the essence of a settlement").

The Settlement Agreement also offers significant prospective non-monetary relief to all Settlement Class Members. The Settlement requires that for a period of no less than ten (10) years, Brookdale will include the following on its webpage and in resident admission contracts for Brookdale ALFs:

> We make no promise or representation regarding whether or how a resident's assessed needs impact staffing determinations at a given facility. There is no guarantee that an increase in a resident's assessed needs will result in an increase in staffing at the resident's facility.
>
> *See* Ex. A § VI, ¶ 6.1 and 2.

This language will inform all current (and prospective) residents of a Brookdale ALF that staffing determinations are independent of assessed needs. This will eliminate any misunderstanding on the part of residents with respect to the determination of staffing at Brookdale ALFs. Moreover, Brookdale employees will be made aware of this language so that they can inform residents that assessed needs may not result in an increase in staffing.

Of note, "the court must take th[e] risks [of continued litigation] into account in determining whether the proposed settlement is fair, reasonable and adequate." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. Lexis 7841, at *169 (N.D. Ga. Jan. 13, 2020). Here, as in *In re Equifax*, "the guaranteed and immediate recovery for the class made available by th[e] settlement far outweighs the mere possibility of future relief after lengthy and expensive litigation," particularly because the reality is that "there is a serious risk that many if not all class members will receive nothing." *Id.*; *see also Johnson*, 2011 WL 4357376 at *1 (where "settlement

assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor" when considering the risk of continued litigation).  As this court stated in *Lipuma*, "the existence of strong defenses to the claims makes the possibility of a low recovery quite reasonable."  406 F. Supp. 2d at 1323.

As discussed in detail above, Plaintiff and the proposed Settlement Class faced hurdles in litigating their claims to class certification and ultimate resolution that would, if Plaintiff prevailed, provide the Class with the damages sought in the Complaint.  Although Class Counsel and Plaintiff believe they have compelling responses to Brookdale's defenses, there is no telling whether a litigation class would be certified and, if so, whether a jury would award the damages sought by Plaintiff and the Class.  As such, the relief provided by the Settlement— which provides direct monetary and other relief to each Settlement Class Member now and eliminates the inherent risk and cost of future litigation—falls well within the range of reasonableness.  *See, e.g., In re Equifax*, 2020 U.S. Dist. Lexis 7841 (noting that the fact that plaintiffs achieved "the relief in the settlement in the face of the risk they face strongly weighs in favor of approving the settlement as fair, reasonable and adequate"); *Keegan v. Am. Honda Motor Co, Inc.*, 2014 WL 12551213, at *10 (C.D. Cal. Jan. 21, 2014) (approving settlement and observing, "[w]hile it is possible that going to trial might have resulted in additional compensation for class members in the form of statutory and punitive damages, the settlement offers a guaranteed recovery for eligible class members without the risk or further expense of litigation"); *In re Fernald Litig.*, 1989 WL 267039, at *4 (S.D. Ohio Sept. 29, 1989) ("The summary jury did endorse plaintiffs' claim for damages for the establishment of a fund for medical monitoring and epidemiological studies and punitive damages.

22

There is no guarantee, of course, that a trial jury would replicate this result.").[4]

### F. The Opinions of Settlement Class Counsel, the Class Representative, and Absent Class Members Strongly Favor Settlement Approval.

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiff will adequately represent the class in the action, and its conclusion was warranted. (D.E. 136 at ¶ 1). ("The Court finds. . . Plaintiff fairly and adequately represents the interests of the Settlement Class."). Here, Class Counsel—who has litigated numerous consumer class actions in state and federal court—took the lead role in negotiating the terms and structure of the settlement negotiations on behalf of Plaintiff. Based on her and her firm's experience, as well as her review of the discovery produced to date, it is Class Counsel's informed opinion that the settlement is fair, reasonable, adequate, and in the best interests of the Class. *See In re Domestic Air Transp*., 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that

---

[4] The fact that the parties agreed to a "claims-made" settlement does not render its terms unreasonable. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.") (citing to *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011)); *Shames v. Hertz Corp.*, 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (approving claims-made settlement over objections because "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements") (citations omitted); *Lemus v. H & R Block Enters. LLC*, No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-cv-691-T-30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion). The parties agreed to a claims-made settlement because it provides the best possible opportunity for Brookdale to determine on a class-wide basis the identity of qualifying Settlement Class Members.

of counsel.'") (citations omitted).

Furthermore, as of February 22, 2020, not a *single* Settlement Class Members has objected to the Settlement.  And only five have filed an opt-out request.  *See* Gustafson Dec. ¶ 23.  As the former Fifth Circuit stated in *In re Beef Indus. Antitrust Litig.*, the lack of objections to a settlement is "a strong indication that the settlement is fair."  607 F.2d 167, 180 (5th Cir. 1979); *see also, e.g., Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement."); *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices).

***

In sum, each of the factors bearing on the evaluation of a class settlement weigh in favor of approval of the Settlement in this case.  The Settlement is fundamentally fair, adequate and reasonable, providing concrete benefits to the Class without the risk and costs attendant in protracted litigation.  The Court should approve the Settlement.

## II.   THE COURT SHOULD GRANT CLASS COUNSEL'S APPLICATION FOR PAYMENT OF ITS REASONABLE ATTORNEYS' FEES AND EXPENSES.

For its extensive work in achieving the Settlement and considering the risks and obstacles to prevailing in a litigation, Class Counsel seeks payment of $87,000.00 in attorneys' fees and $3,480.61 in expenses, which will be paid by Brookdale pursuant to the terms of the Settlement.  Class Counsel's attorneys' fees request does not affect the monetary relief available to Class Members as Brookdale will pay the fees and expenses directly to Class Counsel.

The requested attorneys' fees here are eminently reasonable as they are based on the hours reasonably expended at an appropriate hourly rate ***without*** a multiplier.  As to the reasonableness of the rate, Class Counsel and her firm have significant class action and trial experience, having

obtained numerous multimillion-dollar results in varying civil actions, including class actions. Due to their levels of experience and results obtained for their clients, Class Counsel and her firm charge hourly rates ranging from $500.00 per hour to $750.00 per hour.  Each attorney's hourly rate (and higher) is routinely charged in this locality for legal services of a similar nature, considering the results obtained by each attorney on behalf of their clients, and the type and level of experience, training, and education.  Given the experience, reputation, skill, and results obtained for the clients by Class Counsel, these hourly rates are reasonable and are well within those customarily charged in this locale for services of a similar nature.

As to the reasonableness of the hours expended, Class Counsel spent many hours investigating the claims asserted in this case, reviewing all pleadings and hearing transcripts, considering and analyzing the discovery, and evaluating the Court's rulings.  As a result of this work, Class Counsel gained an understanding of the significant hurdles in the case and likelihood that Brookdale may prevail in the litigation.  Following this, Class Counsel engaged in a series of communications with Brookdale's counsel and mediator Harry R. Schafer in an attempt to settle the case.  The result of substantial arms-length negotiations between the parties was a settlement of this case, which had previously been unthinkable.  Further, the representation of the Class and duties of Class Counsel does not end with final approval of the Settlement.  Ultimately, Class Counsel is responsible for seeing that the terms of the Settlement are followed, which involves a substantial time commitment until the claims process is completed.

Because of the significant risks associated with this action and potential barriers faced by Plaintiff and Class Counsel, Class Counsel achieved an exceptional recovery for the Class—partial (or complete refunds to residents of Brookdale ALFs and prospective injunctive relief.  The result here perhaps best establishes the propriety of the requested fee award.  *See Hensley v. Eckerhart,*

461 U.S. 424, 436, (1983) (a "critical factor" in determining the reasonableness of the fee award "is the degree of success obtained"); *Pinto v. Princess Cruise Lines,* 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007); *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

## CONCLUSION

Plaintiff and Class Counsel respectfully request the Court grant final approval of the settlement, as well as the application for Class Counsel's attorneys' fees and expenses.

March 11, 2020.                    Respectfully submitted,


By: */s/Gail A. McQuilkin*
    Gail A. McQuilkin, Esq.
    Florida Bar No. 0969688
    gam@kttlaw.com
    Robert J. Neary, Esq.
    Florida Bar No. 81712
    rn@kttlaw.com
    **KOZYAK TROPIN & THROCKMORTON LLP**
    2525 Ponce de Leon Blvd., 9th Floor
    Coral Gables, FL 33134
    Telephone:   (305) 372-1800
    Facsimile:   (305) 372-3508

    *Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2020 the foregoing document was filed with the Clerk of Court and furnished via CM/ECF to all participating recipients.

    */s/ Gail A. McQuilkin*

1225158(v4)